UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
SEP 07 2017
MARY L. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

YANG ZHAO,

     Plaintiff,

    v.

KEUKA COLLEGE, JORGE DIAZ-HERRERRA,
PAUL FORESTELL, and DAN ROBESON,

     Defendants.

**DECISION AND ORDER**

6:16-CV-06643 EAW

## **INTRODUCTION**

Plaintiff Yang Zhao ("Plaintiff") filed this action on September 21, 2016, challenging a decision to deny her tenure at Keuka College ("Keuka"). (Dkt. 1). In addition to Keuka, Plaintiff names Keuka's President, Jorge Diaz-Herrerra ("Diaz-Herrerra"); Keuka's Provost, Paul Forestell ("Forestell"); and the Chair of Plaintiff's department, Dan Robeson ("Robeson") as defendants. (Dkt. 3). Plaintiff claims discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New York State Human Rights Law ("NYSHRL"). (*Id.*). Presently before the Court are Plaintiff's motion to amend (Dkt. 16) and Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 12).

For the reasons stated below, Plaintiff's motion to amend is granted and Defendants' motion to dismiss is granted in part and denied in part.

- 1 -

# FACTUAL BACKGROUND[1]

Plaintiff, a U.S. citizen of Chinese origin, alleges that she was denied tenure by Defendants because of her ethnicity, race, and national origin. (Dkt. 16-1 at ¶¶ 12-16). Plaintiff was employed by Keuka as an assistant professor in the Division of Business and Management from August 2012 to August 2016. (*Id.* at ¶ 14). From February 2006 through August 2012, Plaintiff was an adjunct faculty instructor at Keuka. (*Id.* at ¶ 15).

Plaintiff alleges that "[a]s she entered the final state of the tenure evaluation process at the end of 2014, her performance evaluations, classroom observation reports, and letters of recommendation had been very positive and indicated continued satisfactory process towards tenure." (*Id.* at ¶ 17). However, despite the positive reviews, the chair of the Division of Business and Management, Defendant Robeson, "recommended that [Plaintiff] be denied tenure on January 18, 2015. . . ." (*Id.* at ¶ 26). Plaintiff sought review of Robeson's decision by Keuka's Professional Standards Committee ("PSC"). (*Id.* at ¶ 28). The PSC disagreed with Robeson's recommendation, and sent a letter to that effect to Keuka's President, Defendant Diaz-Herrerra. (*Id.* at ¶ 29).

"After reviewing the recommendation of the [PSC] in support of [Plaintiff's] promotion, the provost/vice president for academic affairs, [Defendant] Forestell denied [Plaintiff's] application for tenure in a letter to [Diaz-Herrerra on] March 25, 2015." (*Id.* at ¶ 30). Plaintiff alleges that Forestell's letter "was rife with stereotyping statements and

---

[1]    The facts here are as alleged in the proposed amended complaint.

generalizations based on [Plaintiff] being Chinese. . . ." (*Id.* at ¶ 31). Forestell's letter included observations discounting Plaintiff's positive reviews from Chinese students because "students from China . . . are far less likely than American students to appear disrespectful by questioning authority," and that Plaintiff spoke "too quickly to be understood." (*Id.* at ¶¶ 32, 35). Plaintiff further alleges that Forestell ignored positive evaluations recommending her for tenure. (*See id.* at ¶¶ 51-57). To support his recommendation, Forestell had unqualified individuals from outside Plaintiff's field of study review Plaintiff's Chinese publications and work history. (*Id.* at ¶¶ 61-63). No other tenure candidate had been subjected to this type of evaluation. (*Id.* at ¶ 64).

Diaz-Herrerra sent Plaintiff a letter on April 3, 2015, agreeing with Robeson and Forestell's recommendation to deny tenure. (*Id.* at ¶ 66; *see also id.* at ¶ 80 (stating that Diaz-Herrerra's April 3, 2015, letter denied Plaintiff tenure)). Plaintiff thereafter complained to Keuka's Faculty Liaison Committee ("FLC"), and directly to Diaz-Herrerra. (*Id.* at ¶¶ 67-68). The FLC agreed with Plaintiff, stating that "the decisions made by the Division Chair, the Provost, and the President to deny [Plaintiff] tenure and promotion were not bona fide exercises of professional academic judgment and were the result of inadequate consideration." (*Id.* at ¶ 69). Plaintiff alleges that both the PSC and the FLC were pressured by the administration to change their findings. (*Id.* at ¶¶ 77-78).

Plaintiff claims that she suffered "depression and anxiety, humiliation and oppression, physical harm, and emotional and mental distress, in addition to loss of

wages, salary and other benefits, professional advancement, and other damages" because of Defendants' actions. (*Id.* at ¶ 89).

## DISCUSSION

The Court first addresses Plaintiff's motion to amend, then moves on to Defendants' motion to dismiss.

## I.    **Plaintiff's Motion to Amend**

Plaintiff's original complaint was filed on September 21, 2016 (Dkt. 1), and the next day, Plaintiff filed an amended complaint as a matter of right (*see* Dkt. 3). Plaintiff now seeks leave to file another amended complaint. (Dkt. 16). The factual allegations in the proposed amended complaint are identical to those in the amended complaint. (*See* Dkt. 3; Dkt. 15; Dkt. 16-1). The proposed amended complaint only seeks to add a claim under 42 U.S.C. § 1981. (*Id.* at 17-18).

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* An amendment is futile if the proposed amended complaint does not state a claim upon which relief can be granted. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.

- 4 -

2002). Here, Defendants oppose amendment on the ground of futility. (Dkt. 21-2 at 6-19).

### A.     <u>42 U.S.C. § 1981</u>

Section 1981 provides:

> All persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. The Second Circuit provides that if the allegations in a complaint establish a *prima facie* case under the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) burden-shifting framework, the plaintiff has sufficiently stated a claim under § 1981. *Littlejohn v. N.Y.C.*, 795 F.3d 297, 307 (2d Cir. 2015); *see also Doe v. Columbia Univ.*, 831 F.3d 46, 56 n.9 (2d Cir. 2016) (noting that the *McDonnell Douglas* burden-shifting framework applies to § 1981 cases (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999)).

> At the first stage of the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that: '1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'

*Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (citation omitted).

"In order to survive a motion to dismiss, a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'"

*Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67, 69 (2d Cir. 2015) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)); *see, e.g.*, *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) ("To state a discrimination claim under . . . § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent."). Conclusory allegations of racial discrimination are insufficient to survive a motion to dismiss. *Id.* "Ultimately, the plaintiff will be required to prove that the employer-defendant acted with discriminatory motivation. However, in the first phase of the case, the prima facie requirements are relaxed." *Littlejohn*, 795 F.3d at 307.

## B.   The Proposed Amended Complaint Plausibly States a § 1981 Claim

The proposed amended complaint satisfies each prong of a § 1981 claim. In passing § 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Congress intended to "provide protection for immigrant groups such as the Chinese." *Id.* Here, Plaintiff alleges that she was denied tenure "because of her racial and national origin of being Chinese." (Dkt. 16-1 at ¶ 16). As such, she has satisfied the first prong of a *prima facie* case. *See, e.g.*, *Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016) (finding that the plaintiff established the first prong of a § 1981 claim by alleging that he was "a member of a protected class on account of his Chinese nationality").

Next, Plaintiff alleges that she was employed by Keuka as an assistant professor in the Division of Business and Management from August 2012 to August 2016. (Dkt. 16-1 at ¶ 14). From February 2006 through August 2012, Plaintiff was an adjunct faculty instructor at Keuka. (*Id.* at ¶ 15). Plaintiff further alleges that she had positive evaluations prior to being denied tenure, and that she had made "satisfactory progress towards tenure." (*Id.* at ¶ 17; *see, e.g., id.* at ¶ 24 (alleging that Plaintiff's ratings "met or exceeded the ratings needed to secure tenure")). Taking these factual allegations as true, Plaintiff has adequately alleged that she was qualified for the position of tenured professor.

Plaintiff also adequately alleges that she suffered an adverse employment action.

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Mathirampuzha*, 548 F.3d at 78. Plaintiff alleges that she was denied a promotion to the position of tenured faculty. (Dkt. 16-1 at ¶ 16). This is sufficient to establish the third prong. *See, e.g., Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 398 (S.D.N.Y. 2013) ("[T]he plaintiff suffered an adverse employment action in 2010, when the plaintiff was denied tenure and her probationary employment ended.").

Plaintiff has also plausibly alleged, at this stage in the proceedings, Defendants' intent to discriminate. Plaintiff puts forth multiple allegedly discriminatory statements

made by Forestell in his recommendation to deny Plaintiff tenure. (*See, e.g.*, Dkt. 16-1 at ¶ 32 (discounting Plaintiff's positive evaluation from Chinese students because "they are far less likely than American students to appear disrespectful by questioning authority"); *id.* at ¶ 35 (criticizing Plaintiff for speaking too quickly to be understood); *id.* at ¶ 43 (same)). The Second Circuit has noted four factors which go to whether alleged discriminatory remarks are probative of discriminatory intent:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see also Yan*, 2016 WL 1276456, at *4 (applying the *Henry* factors to determine whether, when challenged under Rule 12(b)(6), the plaintiff plausibly stated a claim). Each of these factors suggests that the alleged remarks are probative of discriminatory intent. Forestell, as Keuka's Provost, had a significant role in the tenure decision concerning Plaintiff, as evidenced by his recommendation to Diaz-Herrerra. The allegedly discriminatory remarks at issue were made in the written recommendation itself. That recommendation was adopted by Diaz-Herrerra, who then denied Plaintiff tenure. Plaintiff has plausibly alleged that the remarks were discriminatory. Defendants painstakingly argue otherwise, but their arguments are belied by the actual text of the alleged remarks in Forestell's

recommendation.[2]   Finally, the recommendation was clearly related to the decision-making process, in that it recommended a course of action to Diaz-Herrerra.

This conclusion does not mean that Plaintiff can prove discriminatory intent at trial, or even sufficiently to survive a motion for summary judgment.   It simply means that under the relaxed standard at this stage in the proceedings, she has plausibly alleged discriminatory intent.

Therefore, Plaintiff has plausibly alleged a claim and her amendment would not be futile.   The Court further finds that there was no undue delay in bringing the motion to amend.   Additionally, at this stage in the proceedings there would be little prejudice to Defendants in allowing the amendment.   Defendants were already on notice of Plaintiff's intent to bring an action based on alleged discrimination.   The case is in the early stages. No Defendant has answered the amended complaint, nor has discovery begun.   In light of the foregoing, and the requirement that district courts freely grant leave to amend, Plaintiff's motion to amend is granted.

---

[2]     For example, Defendants argue that Plaintiff failed to sufficiently allege intent to discriminate through statements as to her speaking style or accent.   (Dkt. 21-2 at 12). Defendants cite two cases—*Bina v. Providence Coll.*, 39 F.3d 21 (1st Cir. 1994) and *Lolonga-Gedeon v. Child & Family Servs.*, 106 F. Supp. 3d 331 (W.D.N.Y. 2015) (Wolford, J.)—for the proposition that criticism by Forestell of Plaintiff's speaking style cannot be interpreted as plausibly alleging discriminatory intent.   Neither case dictates the outcome here because, among other reasons, the procedural posture of both cases was different, with *Bina* being after trial, and *Lolonga-Gedeon* being on summary judgment.

Here, in contrast, the inquiry is not whether the Court credits Plaintiff's allegations, or whether there is an issue of material fact, but whether Plaintiff has plausibly alleged a "minimal inference of discriminatory motivation."   *Littlejohn*, 795 F.3d at 307.

## II.    Defendant's Motion to Dismiss

Because the proposed amended complaint merely adds a cause of action and does not alter Plaintiff's factual allegations in any way, the Court can consider Defendants' motion to dismiss the remainder of Plaintiff's causes of actions.  In addition to the § 1981 claim discussed above, Plaintiff asserts five causes of action: (1) a disparate treatment claim under Title VII; (2) a hostile work environment claim under Title VII; (3) a disparate treatment claim under the NYSHRL; (4) a hostile work environment claim under the NYSHRL; and (5) an aiding and abetting claim under the NYSHRL.  (Dkt. 16-1 at ¶¶ 90-120).

### A.    Standard of Review

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011).  In considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally may consider only "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. N.Y.C.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

**B.**   **The Affidavit and Certain Exhibits Attached to Plaintiff's Opposition Papers Cannot be Considered**

Plaintiff filed papers in opposition to Defendants' motion which include factual information not included in the amended complaint. (Dkt. 15-2). Among other documents, Plaintiff submits an affidavit containing 53 separate paragraphs setting forth various factual details that are not included in the amended complaint. (*Id.* at 1-12). Attached to Plaintiff's affidavit is the charge that she filed with the U.S. Equal Employment Opportunity Commission ("EEOC") (*id.* at 14-25), with attached exhibits as follows: (A) Plaintiff's curriculum vitae (*id.* at 27-31); (B) Diaz-Herrerra's April 3, 2015 letter (*id.* at 33); (C) various appraisals and letters in support of Plaintiff's application for tenure (*id.* at 35-42); (D) Robeson's recommendation that Plaintiff be denied tenure (*id.* at 44-47); (E) a memo from Plaintiff to the PSC dated January 29, 2015 (*id.* at 49-64); (F) the PSC's recommendation dated February 16, 2015, to Diaz-

Herrerra (*id.* at 66-67); (G) Forestell's recommendation dated March 25, 2015, that Plaintiff be denied tenure (*id.* at 69-74); (H) a letter of recommendation dated December 13, 2014 (*id.* at 76-77); (I) Plaintiff's letter to the FLC dated April 15, 2015 (*id.* at 79-80); (J) Plaintiff's letter to Diaz-Herrerra dated May 1, 2015 (*id.* at 82); (K) the FLC's recommendation to Diaz-Herrerra dated June 15, 2015 (*id.* at 84-86); and (L) a letter from Diaz-Herrerra to Plaintiff dated May 7, 2015 (*id.* at 88), and a letter from Plaintiff's counsel to the EEOC dated February 29, 2016 (*id.* at 89).

Also attached to Plaintiff's affidavit are portions of the 2014-2015 Keuka College Faculty Handbook (*id.* at 91-154), emails between Plaintiff and Forestell dated May 25, 2015 (*id.* at 156-57), a letter from Plaintiff to Diaz-Herrerra dated June 26, 2015 (*id.* at 159), a letter from Plaintiff to Dr. Carolyn Klinge, Chair, Academic Affairs Committee, Keuka College Board of Trustees, dated October 2, 2015 (*id.* at 161-62), and a letter from Plaintiff to Robert Schick, Chair, Keuka College Board of Trustees, dated November 12, 2015 (*id.* at 164).

In deciding a Rule 12(b)(6) motion, the Court is generally limited to reviewing "the allegations contained within the four corners of [Plaintiff's] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998); *see, e.g., Friedl v. N.Y.C.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding that a district court errs if, in deciding a Rule 12(b)(6) motion, it "relies on factual allegations contained in legal briefs or memoranda."). However, where the additional documents are integral to or relied upon by the amended complaint, the Court may consider them without converting the motion

to one for summary judgment under Federal Rule of Civil Procedure 56. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that even if not attached to the complaint, a document which is "*integral to the complaint* may be considered by the court in ruling on [a Rule 12(b)(6)] motion." (citations omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where [the] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

Most of the materials included within Plaintiff's affidavit and attached thereto as exhibits are not properly before the Court on this Rule 12(b)(6) motion. Plaintiff has submitted 164 pages of additional information, most of which is neither integral to nor relied on in the amended (or proposed amended) complaint. Even the EEOC charge is neither integral to nor relied on in the complaint—the amended complaint makes no mention of the charge itself, let alone many of the exhibits attached to the charge,[3] and instead only references the Dismissal and Notice of Suit Rights issued by the EEOC on July 11, 2016. (*See* Dkt. 3 at ¶ 4). Nonetheless, some of the materials attached to Plaintiff's 164-page submission may be properly considered on this Rule 12(b)(6) motion because they are expressly referenced in the amended complaint, including Forestell's

---

[3] In fact, counsel for Defendants indicates that the EEOC charge received by Keuka did not contain any exhibits. (Dkt. 12-1 at ¶ 3).

- 13 -

March 25, 2015, recommendation that Plaintiff be denied tenure (*see* Dkt. 3 at ¶¶ 30-38) and Diaz-Herrera's letter dated April 3, 2015 (*see id.* at ¶ 66).

## C.    Plaintiff's Title VII Claims are Time Barred

Defendant argues that Plaintiff's Title VII allegations are untimely, as the underlying actions occurred more than 300 days before Plaintiff filed a charge with the EEOC. (Dkt. 12-4 at 7-9). Because New York is a so-called dual-filing or deferral state, a plaintiff must file a charge under Title VII within 300 days of the occurrence of a discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *see, e.g., Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996). The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint within the required time period will bar a plaintiff's action. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

The "limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim." *Green v. Brennan*, 136 S. Ct. 1769, 1780 (2016). For purposes of the statute of limitations, where a plaintiff asserts discrimination in the denial of tenure, the limitations period commences "at the time the tenure decision [is] made and communicated to [the plaintiff]." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *see, e.g., Joseph v. N.Y.C. Bd. of Educ.*, 171 F.3d 87, 91 (2d Cir. 1999) ("A claim under Title VII for a discriminatory denial of tenure arises when the employee receives definite notice of the tenure decision. This is so even if the actual discharge date is later, and even if the tenure denial is subject to a grievance procedure, administrative review, and

possible reversal." (citations omitted)); *see also Lomako v. N.Y. Inst. of Tech.*, 440 F. App'x 1, 2-3 (2d Cir. 2011) ("In *Ricks*, the Supreme Court held that the limitations period for a professor's Title VII claim based upon a discriminatory denial of tenure commenced on the date that the professor was notified of the decision denying him tenure, not the date of his subsequent termination."). The existence of an avenue to appeal or seek reconsideration of a tenure decision does not toll the running of the limitations period. *Ricks*, 449 U.S. at 261; *see, e.g., Joseph*, 171 F.3d at 91. "Mere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws." *Ricks*, 449 U.S. at 261 n.15.

Here, Plaintiff's amended complaint establishes the date of the tenure decision. Plaintiff alleges that Forestall "denied her application for tenure in a letter to [Diaz-Herrerra on] March 25, 2015." (Dkt. 16-1 at ¶ 30). Plaintiff also states that Diaz-Herrerra "agreed with Robeson and [Forestell] in a letter of April 3, 2015," (*id.* at ¶ 66), and that Diaz-Herrerra "den[ied] tenure" with his April 3, 2015, letter. (*Id.* at ¶ 80).

The amended complaint does not provide the date upon which Plaintiff filed her EEOC charge (*see* Dkt. 3), but it appears undisputed that the date Plaintiff filed the EEOC charge was on or about March 3, 2016. Defendants submit in their motion papers that Plaintiff's charge was filed with the EEOC on March 3, 2016 (Dkt. 12-1 at ¶ 3; Dkt. 12-4 at 9), and Plaintiff agrees with this date in her motion papers (Dkt. 15-1 at 6 ("[Plaintiff] timely filed her charge with the EEOC, received by the EEOC on March 3, 2016); *see also* Dkt. 15-2 at 89 (letter sent by Plaintiff's counsel to EEOC on February

29, 2016, by overnight delivery)). Thus, the Court assumes March 3, 2016, to be the date Plaintiff filed her charge with the EEOC.

Again, Plaintiff alleges in the amended complaint that Plaintiff's application for tenure was denied in Forestell's letter to the College President (Diaz-Herrera) dated March 25, 2015 (Dkt. 3 at ¶ 30), and the President agreed in a letter dated April 3, 2015 (*id.* at ¶ 66). Thus, pursuant to clear Supreme Court and Second Circuit precedent, the limitations period began to run, at the latest, on April 3, 2015. An EEOC charge filed on March 3, 2016, is beyond the 300-day deadline under Title VII.

Plaintiff raises numerous arguments in an attempt to avoid the untimeliness of her charge. First, she argues that "she has never received a final decision on her tenure application," because only Keuka's Board of Trustees can make such a determination. (Dkt. 15-1 at 14). In support of her contention that Diaz-Herrerra was not the final decisionmaker, Plaintiff relies on her affidavit and the Keuka Faculty Handbook—neither of which are properly before this Court on this Rule 12(b)(6) motion, and, as such, cannot be considered. Moreover, this argument is belied by the clear statements in Plaintiff's proposed amended complaint (and in her verified amended complaint). Plaintiff alleges that that "[t]he defendants engaged in racial and national origin discrimination against her *in 2014 and 2015 by denying her a promotion to a tenured professor position.* . . ." (Dkt. 16-1 at ¶ 16 (emphasis added)). She complains that Forestall "*denied* her application for tenure in a letter to [Diaz-Herrerra on] March 25, 2015." (Dkt. 3 at ¶ 30 (emphasis added)). She further alleges that Diaz-Herrerra "den[ied] tenure" with his April 3, 2015,

- 16 -

letter. (*Id.* at ¶ 80). Plaintiff also points to the FLC's June 15, 2015, letter which communicates that body's determination concerning "*the decisions made by the Division Chair, the Provost and the President to deny [Plaintiff] tenure....*" (*Id.* at ¶ 69 (emphasis added)). This language plainly indicates that the determination to deny tenure was made and communicated to Plaintiff by Diaz-Herrerra's April 3, 2015, letter.

Next, Plaintiff seems to argue that her application to the FLC was sufficient to toll the statute of limitations at least until the FLC announced its decision on June 15, 2015. (Dkt. 15-1 at 14-15). This argument is foreclosed by *Ricks*, because the existence or pursuit of an appeal or reconsideration of a tenure decision does not toll the statute of limitations. *See Ricks*, 449 U.S. at 261; *see, e.g., Joseph*, 171 F.3d at 91.

Plaintiff asserts that she was the victim of a continuing violation under Title VII, and, as such, the statute of limitations has not run. (Dkt. 15-1 at 15-16). "Pursuant to the 'continuing violation' doctrine, a plaintiff may bring an otherwise time-barred discrimination claim where the alleged acts of discrimination occurred pursuant to an ongoing policy of discrimination." *Little v. Nat'l Broadcasting Co.*, 210 F. Supp. 2d 330, 366 (S.D.N.Y. 2002) (citing *Annis v. Cty. of Westchester*, 136 F.3d 239, 245-46 (2d Cir. 1998)). "A continuing violation may be found where there is proof of specific ongoing discriminatory policies [sic] or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994)) (alteration original). "The continuing violations doctrine is

disfavored and courts are hesitant to apply it absent a showing of compelling circumstances." *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007).

> A continuing violation may not be premised on discrete incidents of discrimination that are not related to discriminatory policies or mechanisms. Thus, completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature. Nor can a continuing violation be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment. Rather the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.

*Little*, 210 F. Supp. 2d at 366 (internal quotations and citations omitted). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled on other grounds by Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

Even construed liberally, the proposed amended complaint contains neither allegations of a continuous practice of discrimination, nor a policy of discrimination. Rather, Plaintiff alleges a single discrete incident of discrimination—the denial of tenure. These allegations are patently insufficient to amount to a continuing violation. *See Ricks*, 449 U.S. at 257 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."); *Martin v. N.Y.S. Dep't of Corr. Servs.*, 224 F. Supp. 2d 434, 443-44 (N.D.N.Y. 2002) (multiple acts of

discrimination are not a continuing violation absent a "constant stream" of similar, allegedly discriminatory conduct). *Cf. Sunshine v. Long Island Univ.*, 862 F. Supp. 26, 29 (E.D.N.Y. 1994) (finding a continuing violation where the plaintiff was denied tenure on six consecutive years by the same person, despite being recommended for tenure).

Finally, Plaintiff argues that the statute of limitations should be equitably tolled. (Dkt. 15-1 at 15-16). The timely filing of a charge under Title VII is, like a statute of limitations, subject to equitable tolling. *Odom v. Doar*, 497 F. App'x 88, 89 (2d Cir. 2012). Equitable tolling applies where (1) the plaintiff actively pursued judicial remedies, but filed a defective filing within the statutory time period, (2) an adversary "induced or tricked" the plaintiff into filing after a deadline passed, (3) a court misled the plaintiff, (4) affirmative misconduct by the defendant "lulled [the] plaintiff into inaction," (5) notice to the plaintiff was inadequate, or (6) there is a pending motion to appoint counsel. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11-12 (2d Cir. 1994). A district court must determine whether the plaintiff acted with reasonable diligence during the tolling period, and whether the plaintiff "has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations omitted). In other words, "equitable tolling [of the 300-day statutory deadline] is only appropriate 'in rare and exceptional circumstances' . . . in which a party is 'prevented in some extraordinary way from exercising [her] rights.'" *Id.* at 80 (internal citations omitted).

Plaintiff has not alleged sufficient facts to support equitable tolling. Defendants were not the cause of delay. Plaintiff also does not claim she was tricked into filing after the 300-day time period had run. This case simply does not involve the type of rare and exceptional circumstances implicating equitable tolling.

The federal statute clearly requires that an EEOC charge be filed within 300 days of the alleged discriminatory action. Plaintiff failed to file within the required time period. Therefore, Plaintiff's Title VII causes of action must be dismissed.[4]

### D. The Court has Subject Matter Jurisdiction Over Plaintiff's State Law Claims

Defendants argue that the Court lacks jurisdiction to hear Plaintiff's state law claims because no valid federal cause of action remains after dismissing the Title VII claims. (Dkt. 12-4 at 12). However, because the Court granted Plaintiff's motion to amend, adding a cause of action under § 1981, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Court's subject matter jurisdiction extends to Plaintiff's state law claims, because those claims arise out of the same controversy as the §1981 claim—the alleged discriminatory action by Defendants in denying Plaintiff

---

[4]     The Court notes that even if Plaintiff's Title VII claims were timely, they would be dismissed as to Diaz-Herrerra, Forestell, and Robeson. "Employers, not individuals, are liable under Title VII." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012); *see, e.g., Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("Title VII claims are not cognizable against individuals. . . .").

tenure. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . .").

E.   **Plaintiff Fails to Plausibly Allege a Hostile Work Environment Claim**

Defendants contend that Plaintiff has failed to plausibly allege a hostile work environment under either Title VII[5] or the NYSHLR. (Dkt. 12-4 at 13).

A hostile work environment that is actionable denotes a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . .'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). A plaintiff pursuing a hostile work environment claim must "plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race or nationality]. . . .'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted). Whether an environment is "abusive" or "hostile" is evaluated based upon all the

---

[5]      Since Plaintiff apparently remained employed by Defendants until August 2015 (*see* Dkt. 15-2 at 33), she arguably could have asserted a timely hostile work environment claim with an EEOC charge filed on March 3, 2016, at least based on any alleged conduct within the 300-day window. However, this assumes that Plaintiff plausibly alleged a hostile work environment claim—which she has not.

circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the conduct is physically threatening or humiliating, or "a mere offensive utterance"; and (4) whether it "unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. When evaluating a hostile work environment claim, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but should consider "the totality of the circumstances, viewed from the perspective . . . of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotations and citations omitted) (alteration original). "[C]laims brought under [the NYSHRL] are analytically identical to claims brought under Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011).

To withstand a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. . . .'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Plaintiff has not alleged a hostile work environment. The factual allegations in the proposed amended complaint do not allege a sufficient quality or quantity of harassment so as to lead to a plausible conclusion that a reasonable employee would find the

conditions of her employment altered for the worse. Instead, Plaintiff complains of a discrete incident of discrimination, related to the denial of tenure. (*See* Dkt. 16-1). Plaintiff does not allege that she was the subject of frequent and/or severe harassment by Defendants or others. The alleged discriminatory statements occurred, primarily, in one written document—Forestell's March 25, 2015, recommendation. (*See* Dkt. 16-1 at ¶¶ 31-65). As Plaintiff notes, "[h]ostile environment claims by their very nature involve repeated conduct." (Dkt. 15-1 at 10); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) ("[H]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). But Plaintiff alleges no repeated conduct, only discrete acts. Plaintiff complains of particular statements, made in a single document, recommending denial of tenure. She also complains that she was denied tenure discriminatorily. These actions, viewed in the aggregate, do not state a plausible claim that Plaintiff was subject to a hostile work environment. Indeed, no reasonable view of the March 25, 2015, letter could justify construing it as rising to actionable severe or pervasive conduct necessary to state a claim for a hostile work environment. (See Dkt. 15-2 at 69-74). Thus, Plaintiff has failed to allege a hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend (Dkt. 16) is granted. Defendants' motion to dismiss (Dkt. 12) is granted in part and denied in part. Plaintiff's Title VII and hostile work environment causes of action are hereby dismissed.

Plaintiff shall file the proposed amended complaint (Dkt. 16-1) as the second amended complaint **within seven days** of the entry of this Decision and Order. Once filed, the second amended complaint will be the operative complaint in this action, but, as described above, the Title VII and hostile work environment causes of action have been dismissed.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 7, 2017
Rochester, New York